[Civ. No. 7204. First Appellate District, Division One.—September 2, 1930.]

GORDON PEEL, a Minor, etc., Appellant, v. CALIFORNIA BELTING COMPANY, INC. (a Corporation), et al., Respondents.

Ford & Johnson for Appellant.

James M. Koford for Respondents.

DOOLING, J., *pro tem.*—Appeal from a judgment of nonsuit. Plaintiff and appellant, a Western Union messenger sixteen years of age, was struck and injured by an automobile operated by respondent Read, at the intersection of Seventh and Brush Streets in the city of Oakland. The

battle on appeal centers around the question whether from the evidence appellant was guilty of contributory negligence barring his right of recovery as a matter of law.

The collision occurred at almost the exact center of the intersection of the two streets. Appellant was riding a bicycle in a westerly direction on the northerly side of Seventh Street at about 7:30 P. M. on February 2, 1929. It was already dark and a rain was falling. Appellant intended to make a "U" turn at Brush Street and come back on the southerly side of Seventh Street. In anticipation of such turn when he reached a point fifty feet easterly from Brush Street he looked back and started to give the arm signal for a left turn. At that point he saw a machine about one hundred feet behind him which afterward passed him on the right. He then proceeded about seventy or seventy-five feet to approximately the center line of Brush Street, made a right-angle turn and proceeded approximately twenty-five feet southerly on Brush Street to the center line of Seventh Street, at which point he was struck . by respondents' automobile, which was traveling westerly on Seventh Street and in the center of the street. From the time appellant looked back along Seventh Street at the point fifty feet from Brush Street he did not turn his head again to look easterly on Seventh Street until just the moment before the collision occurred. Then his attention was attracted to the machine approaching him from his left by the reflection of its lights on the wet pavement and looking in that direction he saw it too close to him to avoid it. During all of this time appellant's rate of travel was three or four miles per hour. Appellant testified that while he did not look easterly along Seventh Street for approaching traffic at any time between the two points mentioned he kept glancing in that direction. When asked what he meant by glancing he said that he meant turning his eyes without turning his head.

Under these undisputed facts we are satisfied that the motion for nonsuit was properly granted. The duty of one making a left-hand turn at an intersection has been thus stated in *Donat* v. *Dillon*, 192 Cal. 426, 430 [221 Pac. 193, 195]: "Although a machine first reaching the intersection may have the right of way, it does not follow that one who changes his course at the intersection of a street

is entitled to the full protection of this rule, for common sense tells us that he is bound to exercise great care to avoid colliding with machines that are on the street and across whose path he must travel. (*Clark* v. *Fotheringham,* 100 Wash. 12 [170 Pac. 323].) It seems to us that this was what the legislature had in mind when it provided that a vehicle, before starting to turn 'shall see first that there is sufficient space for such movement to be made in safety,' so that the practical effect of this provision is to cast upon motorists intending to turn the duty of exercising greater care than is ordinarily required of them.''

█ Certainly appellant in making a left-hand turn across traffic coming from his rear, particularly in view of his comparatively slow rate of progress, was at least bound to use the same degree of care as that required of a pedestrian crossing the street at an intersection. It is settled that such a pedestrian must look in the direction from which traffic may be expected. (*Lord* v. *Stacy,* 68 Cal. App. 517 [229 Pac. 874]; *Finkle* v. *Tait,* 55 Cal. App. 425, 432 [203 Pac. 1031]; *Noisi* v. *Empire Laundry,* 117 Cal. 260 [49 Pac. 185]; *Sheldon* v. *James,* 175 Cal. 474 [2 A. L. R. 1493, 166 Pac. 8].) By merely turning his eyes without turning his head appellant was unable to see respondents' automobile approaching as, with its headlights lighted, he must have done if he had really looked to see whether his turn could be safely made.

█ Appellant seems to think that the fact that he had reached the medial line of Seventh Street before being struck takes his case out of the rule announced in these authorities. We do not think so. Appellant's difficulty is that he never looked to his left at any time after he started to turn. It was his duty to look to see that. no traffic was approaching while he was crossing the half of the street to the medial line. If he had done so he must have seen respondents' machine and could have avoided it. The cases cited by appellant where the injured party after reaching the medial line of the street in safety ceased to observe traffic from his left and centered his attention upon traffic from his right are therefore not in point.

Judgment affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 2, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 30, 1930.