[Civ. No. 12586. First Dist., Div. One. May 29, 1944.]

LORRAINE FLORINE, Respondent, v. MARKET STREET RAILWAY COMPANY (a Corporation) et al., Appellants.

Cyril Appel, Ivores R. Dains, George Liebermann and George E. Baglin for Appellants.

Walter McGovern for Respondent.

PETERS, P. J.—On Sunday afternoon, October 12, 1941, at the intersection of Shotwell and 18th Streets in San Fran-

cisco, a collision occurred between the Ford coupe driven by plaintiff and the trackless trolley operated by the defendant Market Street Railway Company and driven by defendant Daw. Plaintiff suffered a brain concussion, broken ribs, shock and multiple bruises and contusions. The injuries have brought on a neurotic condition not theretofore existing, and have lit up a quiescent hypertrophic arthritic condition. For these injuries this action was instituted. The jury unanimously brought in a verdict for plaintiff for $5,794. From the judgment entered on this verdict defendants appeal.

The accident happened between 2:30 and 3:00 p. m. The day was clear, the streets were dry, the traffic was light. Respondent, just prior to the accident, was driving south on Shotwell Street. About the middle of the block between 17th and 18th Streets she observed two boys playing football. She slowed down to about ten miles per hour in passing the boys, and then increased her speed to about fifteen miles per hour. As she approached the intersection of Shotwell and 18th Streets, she took her foot off the gas. The intersecting streets are level and neither street is a "stop" street. There are buildings on all four corners. Shotwell Street is thirty feet wide from curb to curb, while 18th Street is thirty-four feet wide. Three of the sidewalks at the intersection are fifteen feet wide, and the fourth sidewalk, on the west side of Shotwell Street, is thirteen feet six inches wide. As respondent entered, or was about to enter the intersection, she looked to her left and observed an automobile coming west on 18th Street, which was then in about the middle of the block between Shotwell and Folsom Streets. She then looked to her right and observed the trolley coach about halfway between South Van Ness and Shotwell Streets. That block is 245 feet long, so that at that moment the trolley coach was over 120 feet from the west property line of Shotwell Street. Respondent testified that when she first observed the trolley coach she was unable to estimate its speed. The evidence of appellant Daw and of two other witnesses fixes its speed at that point at twenty miles per hour. Respondent testified that, after observing the trolley coach, she entered the intersection increasing her speed to fifteen miles per hour. She then again looked to her left, then looked ahead to observe conditions in the intersection, and then looked to her right for a second time. She then observed the trolley coach at about the west

property line of Shotwell Street. At that moment the front of respondent's car was just about at the south curb line of 18th Street. Respondent estimated the speed of the trolley coach at that moment at between forty to fifty miles per hour. She thereupon increased her speed in an attempt to avoid the collision. The front of the trolley coach hit the Ford coupe about in the middle and slightly towards the rear. The Ford was pushed sideways from about the center of the street to the southeast corner, and up on the sidewalk and against a telephone pole.

Peter Bruhn, whose car it was that respondent saw driving west on 18th Street, testified that when respondent's car was about to enter the intersection the trolley coach was about halfway between South Van Ness and Shotwell Streets.

Appellant Daw, the operator of the trolley coach, stated that he did not see the Ford until the front end of his bus was within two or three or three and a half feet of the westerly property line on Shotwell Street; that at that time respondent's car was about twenty-five feet from the north property line of 18th Street; that he thought that he had plenty of time to cross the intersection safely; that between South Van Ness and Shotwell Streets he was going about twenty miles per hour. The testimony of Daw as to the speed of the trolley coach was corroborated by the witness Rosemont, who was operating a truck about 100 feet behind the trolley coach, and by the witness Moore, a passenger in the bus.

Daw testified that he was looking straight ahead; that he did not see any cars pass across the intersection along Shotwell Street ahead of the Ford, and that he observed no cars at all on 18th Street. As already pointed out, the witness Bruhn was driving on 18th Street toward the coach and about a block away. The fact that at least two cars crossed the intersection immediately ahead of respondent was established by the testimony of respondent, of Bruhn, and of the two boys who were playing football on Shotwell Street.

It is obvious that the above evidence amply supports the judgment, and appellants make no contention to the contrary. They do contend that certain erroneous and prejudicial instructions were given the jury. It is urged that the evidence was conflicting, and would have supported a verdict for appellants, and that for this reason any error in the instruc-

tions was serious and prejudicial. Appellants argue that their testimony shows that the coach was traveling at a moderate rate of speed and entered the intersection at the same time or before the car of respondent. They also contend that, even if the Ford entered the intersection first, the jury would have been justified in finding respondent guilty of contributory negligence inasmuch as she observed the coach a half block away, and the jury could have found that she should not have rushed into the path of the swiftly moving trolley coach.

█ It is true that there is a conflict in the evidence. It is probably true that a verdict for appellants, had the jury believed the testimony produced by them, would have been supported. This does not mean, however, that any error in the instructions was necessarily prejudicial. Each case must turn upon its own facts. The record as a whole must be considered, and the entire charge to the jury studied before a particular error in the instructions can or should be held to be prejudicial. Art. VI, § 4½ of the Constitution provides that: "No judgment shall be set aside, or new trial granted, in any case, on the ground of misdirection of the jury . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." This record demonstrates the efficacy of this constitutional provision. The case is one where the weight of the evidence favors respondent. When the charge is read as a whole it is obvious that the jury was fully, fairly and correctly charged on all of the basic issues. Under such circumstances any minor error that may have occurred in the instructions cannot and should not be held to have been prejudicial.

█ The first instruction complained of is one in which the jury was told that the respondent, if herself free from negligence, had the right to assume and rely on the presumption that appellants would not violate the law. It is argued that the instruction erred in omitting the qualification that respondent could not rely on the assumption, after knowing, or having an opportunity by the use of reasonable care, to know that the law was not being observed. The instruction in question is three short paragraphs in length. The first paragraph starts: "A person who is herself free from negligence" and continues that such a person has a right to rely on the assumption that others will not be guilty of negligence. The third paragraph starts: "Therefore, if you find by a pre-

ponderance of the evidence that the plaintiff, Miss Florine, was herself free from negligence at the time and place of the accident in this case," then she had the right to assume that appellant Daw would act as a reasonably prudent person in the operation of the coach. Appellants urge that the evidence shows that respondent observed the trolley coach when it was a half block away; that, although the respondent testified that she could not then observe its speed, the jury could have disbelieved her; that the jury could have inferred from the testimony that the coach was going between forty to fifty miles per hour when it entered the intersection; that it was going in excess of the speed limit a half block away, and that respondent should have noticed that fact. In other words, it is appellants' thought that the challenged instruction excluded the defense of contributory negligence. The instruction is not subject to the criticism offered. While the first paragraph used the phrase "A person who is herself free from negligence" has the right to assume that others will obey the law, and may be subject to the criticism that it fails to tell the jury that a person who, up to that moment, is free from negligence, may not assume the defendant will obey the law when the plaintiff knows or should know the defendant is not obeying the law, the third paragraph is much more explicit. After stating the general rule in the first two paragraphs of the instruction, the court then summarized as follows: "Therefore, if you find by a preponderance of the evidence that the plaintiff, Miss Florine, was herself free from negligence *at the time and place of the accident in this case*" (italics added) then she had the right to assume Daw would obey the law. Thus the jury was told not only that respondent must be free of negligence when she first observed the trolley coach, but also that she must be free of negligence at the very "time and place of the accident," before she could rely on the assumption that the trolley coach would obey the law. As so limited, the instruction was justified by the facts and correctly states the law. ▆ Moreover, there was no direct evidence that the coach was exceeding the speed limit when first observed by respondent, or, that if it was, respondent should have observed its illegal speed. Respondent testified that when she first observed the trolley coach she could not estimate its speed. On cross examination she stuck to her story that she had no idea how fast the coach was going when

first observed. Appellants' witnesses all testified that the bus was going about twenty miles per hour at that spot. Respondent did testify that the bus was going between forty to fifty miles an hour when it entered the intersection. Under the facts disclosed by the record the instruction was proper. (*Forrest* v. *Pickwick Stages System*, 101 Cal.App. 426 [281 P. 723].)

Appellants, in contending the challenged instruction was erroneous, place their main reliance on the case of *Angier* v. *Bruck*, 56 Cal.App.2d 55 [131 P.2d 876]. That case, both factually and legally, is distinguishable from the instant case. There the driver for plaintiff testified that as he approached the intersection he observed the defendants' automobile 100 to 125 feet away approaching at fifty to fifty-five miles per hour, and that he did not slow up but proceeded into the intersection. The court instructed that if you find that Raymond Angier "was at all times pertinent to this case driving plaintiff's automobile in a careful and prudent manner" then he had a right to assume that defendant would drive lawfully. The court properly held that the instruction should have been qualified by the statement that one cannot assume the law is being observed after he knows or should know it is being violated. (*Edlund* v. *Los Angeles Ry. Co.*, 14 Cal.App. 2d 673 [58 P.2d 928]; *Donat* v. *Dillon*, 192 Cal. 426 [221 P. 193].) The court held that the failure to give this qualifying instruction was reversible error. But in the present case there is no direct evidence that the coach was in fact violating the law when first observed by respondent—in fact, the evidence is quite uncontradicted that it was not. In the second place, the instruction in the instant case is quite different from that in the cited case. In the instant case the jury was told that before the respondent could rely on the assumption the jury must find that at the very "time and place of the accident" she must be "free from negligence." Obviously, if she knew or should have known the speed of the coach a half block away she would not be free of negligence at the "time" of the accident. Incidentally, our attention has not been called to any more explicit instruction offered by appellants on this subject. Under the circumstances, the instruction correctly stated the law.

The appellants next complain of an instruction given at the request of respondents, and of another given at the request of both parties, dealing with rates of speed. The first

instruction, given at the request of respondents, is in two paragraphs and told the jury in proper language that even though a vehicle was being driven at a rate of speed not in excess of the limit of speed fixed by law, such speed might constitute negligence dependent upon the existing conditions and circumstances. The instruction correctly states the law. (*Dam* v. *Bond,* 80 Cal.App. 342 [251 P.818] ; *Griffith* v. *Oak Ridge Oil Co.,* 190 Cal. 389 [212 P. 913].) Appellants do not contend that the instruction does not correctly state the law, but urge that the very next instruction, when read with the above instruction, must have misled the jury. The next instruction, given at the request of both parties, told the jury that the Vehicle Code provides: "No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property." The instruction correctly quotes section 510 of the Vehicle Code. The theory of the appellants is that by the second instruction the jury was told that the limit of speed fixed by the Vehicle Code is a speed that is reasonable and prudent under the circumstances, and that by the first instruction the jury was told that, although defendants' speed did not exceed that limit, such speed, under proper circumstances, might be negligence. This is a strained construction of the instructions. Appellants requested no instruction on the fixed speed limits contained in the Vehicle Code, nor did respondent. The two instructions, when read together, simply tell the jury that the fact that a vehicle is being driven at a speed not in excess of that fixed by the Code does not disprove negligence, and that under all circumstances speed must not exceed what is reasonable under existing conditions. Both instructions thus dealt with the same subject matter. The two instructions correctly and properly stated the law. If appellants wanted the court to elaborate on the instructions they should have offered one setting forth the fixed speed limit at that intersection. This they failed to do, apparently because they admitted in their opening statement that respondent was not driving at an excessive rate of speed. The instructions could not possibly have misled anyone.

The appellants next contend that prejudicial error was committed by the trial court in inserting the word "lawfully" in the following instruction which was proposed by

appellants: "If you find from the evidence that the trolley coach *lawfully* entered the intersection of Shotwell and 18th Streets at the time and place in question before, or at the same time as, the automobile driven by Miss Florine entered said intersection, the defendant Market Street Railway Company's trolley coach had the right of way." It is conceded by respondent that the word "lawfully" should not have been used. However, after reading the record, including the full charge to the jury, we are convinced that this minor error could not possibly have been prejudicial to appellants. Preceding this instruction the jury was correctly instructed in the exact terms of section 550, subdivision (b) of the Vehicle Code as to what the law provides as to right of way as to vehicles approaching an intersection, and were also fully instructed on this issue by another full and correct instruction offered by appellants on this same subject. Under the circumstances the error was not prejudicial.

Appellants also complain of an instruction proposed by respondent and given by the trial court which, after correctly quoting section 550, subdivision (a), of the Vehicle Code, dealing with right of way, stated: "If you find by a preponderance of the evidence that the defendants, at the time and place of the accident in question, disregarded the law as I have just read it to you, and that their disregard of such law was the sole proximate cause of the injuries inflicted on the plaintiff, Miss Florine, and on her automobile, then I instruct you that a verdict must be rendered for said plaintiff and against the defendants." Appellants urge that this so-called formula instruction is defective in that it fails to tell the jury that the doctrine there enunciated is applicable only if the plaintiff herself is free of negligence. It is somewhat difficult to follow this argument. The instruction states that it is only if they find that the defendants disregarded the right of way provision and if they find that such disregard was "the sole proximate cause of the injuries inflicted on the plaintiff" that it was to decide for plaintiff. When that instruction is read with the many other instructions on proximate cause and contributory negligence it seems obvious to us that the allegedly omitted element was in fact included. Appellants place their sole reliance, so far as this point is concerned, on *Davis* v. *San Francisco,* 45 Cal.App.2d 443 [114 P.2d 359], where the trial court refused to give a somewhat similar instruction. The appellate court held, under the circum-

stances there existing, that it was not error to refuse to give the instruction. The reason given by the court was that the instruction was incomplete in that it failed to state that the person first entering the intersection must himself be free from negligence. The instruction in the present case, particularly when read with the other complete and detailed instructions given, is not fairly susceptible of this criticism.

■ The last objection of appellants is to an instruction on contributory negligence. The instruction reads as follows: "The defense of contributory negligence is an affirmative defense and, unless it appears from the evidence offered on behalf of the plaintiff, it must be established by the defendants by a preponderance of the evidence. Such contributory negligence on the part of a plaintiff which will bar a recovery must consist of some act or omission on her part which is the proximate cause of the injury, and such an act or omission as a person of ordinary prudence and care would not have done or omitted to do." Appellants urge that this instruction erroneously imposed on them the burden of proof and urge that it was not incumbent upon them to show by a preponderance of the evidence that respondent's contributory negligence was "the" proximate cause of her injuries, citing *Dicken* v. *Souther*, 59 Cal.App.2d 203 [138 P.2d 408]. The objection is to the statement that it was incumbent upon the defendants to show that the contributory negligence was "the proximate cause of the injury." That phrase may be somewhat misleading. If it means that the burden was on appellants to show that the contributory negligence was the sole and only cause of the accident it would be incorrect. That was what was held in the Dicken case, relied upon by appellants. It was there held that since contributory negligence was involved, an instruction which purported to state that such contributory negligence was a defense only if it were the *sole* and *only* negligent act without which the accident would not have occurred was erroneous. That is undoubtedly correct. But the phrase here involved is not subject to that criticism. It would have been much better to have used "a" rather than "the," before "proximate cause," but under the circumstances the jury could not have been misled. Some eighteen correct instructions were given on the doctrine of contributory negligence and several instructions properly defined proximate cause. So far as the burden of proof is concerned, the case of *Rush* v. *Lagomarsino*,

196 Cal. 308 [237 P. 1066], is a complete answer to appellants' contention.

The judgment appealed from is affirmed.

Knight, J., and Ward, J., concurred.

A petition for a rehearing was denied June 28, 1944, and appellants' petition for a hearing by the Supreme Court was denied July 27, 1944. Schauer, J., voted for a hearing.